## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2018, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mylon S. Betts, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 17, 2018 <br><br> Court of Appeals Case No. 18A-CR-215 <br><br> Appeal from the Kosciusko Superior Court <br><br> The Honorable Joe V. Sutton, Judge <br><br> Trial Court Cause No. 43D03-1601-F5-30 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Mylon Betts appeals his convictions and sentence for two counts of nonsupport of a dependent child. We affirm one of the convictions, but we accept the State's concession that the other must be vacated under the continuing-crime doctrine. We also agree with Betts's contention that his sentence is inappropriate in light of the nature of his offense and his character, and we revise the sentence accordingly.

# Facts and Procedural History

[2] From 1998 to 2015, Betts was required by court order to pay child support for his son, J.B. In January 2016, the State charged Betts with two counts of nonsupport of a dependent child, alleging that he failed to provide support for J.B. from April 9 through September 3, 2014 (Count I) and again from April 15 through December 8, 2015 (Count II). Nonsupport of a dependent child is generally a Level 6 felony but is a Level 5 felony if the defendant has a previous conviction for the same crime. *See* Ind. Code § 35-46-1-5. Betts was convicted of nonsupport in 2007, so the State charged him with Level 5 felonies in this case. After a jury trial, Betts was found guilty on both counts.

[3] On December 7, 2017, the trial court imposed a sentence of five years, with three years to serve and two years suspended to probation, on Count I. The court ordered Betts to begin his sentence by spending one year on probation, to be followed by three years in jail and then the second year of probation. On

Count II, the court reduced the conviction from a Level 5 felony to a Level 6 felony (finding it would be improper for both convictions to be elevated to Level 5 based on the same prior nonsupport conviction) and imposed a sentence of eighteen months, to run concurrently with the sentence on Count I.

Betts now appeals.

# Discussion and Decision

We begin by acknowledging the State's concession that convictions on both counts of nonsupport of a dependent would violate the "continuing crime doctrine" and that one of the convictions must therefore be vacated. *See, e.g., Boss v. State*, 702 N.E.2d 782, 784 (Ind. Ct. App. 1998) ("The duty to support one's child is a continuous one. A parent who fails to support a child commits a continuing crime."). The State asks us to leave in place the conviction on Count I (the Level 5 felony) and to vacate the conviction on Count II (the Level 6 felony).

We accept the State's concession that only one of the convictions can stand. Before ordering a remedy, though, we briefly address Betts's argument that the State failed to present sufficient evidence to support the conviction on Count I. Again, Count I alleged that Betts failed to provide support to J.B. between April 9 and September 3, 2014. Betts acknowledges that he "did not make any of the court ordered child support payments" during that period. Appellant's Br. p. 19. However, he directs us to his testimony that he (1) "g[ave] the sum of $400

in July 2014 to J.B.'s mother, to be used in part for J.B. on a trip the family was taking" and (2) "provided support in other ways, including food, clothes, and gas money." *Id.* But both J.B. and his mother specifically testified that Betts did not provide any such support. Therefore, Betts's argument is nothing more than a request for us to reweigh the evidence, something we will not do in reviewing the sufficiency of evidence. *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. Ct. App. 2015), *trans. denied*. As such, the conviction on Count I will stand, and, per the State's request, we remand this matter to the trial court with instructions to vacate the conviction and sentence on Count II.

[7] That leaves Betts's argument that his sentence on Count I is inappropriate and should be revised. Indiana Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). Because we generally defer to the judgment of trial courts in sentencing matters, defendants have the burden of persuading us that their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

[8] "[T]he advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Fuller v. State*, 9 N.E.3d 653, 657 (Ind.

2014).  The advisory sentence for a Level 5 felony is three years, with a minimum sentence of one year and a maximum sentence of six years.  *See* Ind. Code § 35-50-2-6.  Here, the trial court imposed an above-advisory sentence of five years, with three years to serve and two years suspended to probation.  Betts contends that an above-advisory sentence is inappropriate under the circumstances of this case.  We agree.

[9] Initially, we note that the trial court found only one aggravating factor: Betts's criminal history.  And the significance of that aggravator is minimal.  Other than the 2007 conviction for nonsupport of a dependent, which is what elevated Count I to a Level 5 felony in the first place, Betts's only prior conviction is for driving with a suspended license, a misdemeanor, in 2005.  In addition to that aggravator, the trial court found as a mitigating circumstance the fact that Betts's sentence would impose a hardship on his other dependents—his wife, his other children, and his mother.  Also, the State does not dispute Betts's assertion that, despite the periods of nonsupport, he made $21,961.34 in child-support payments between 2007 and 2015—a period during which his child-support obligation was $21,588.00.  Furthermore, one of Betts's employers at the time of the sentencing hearing characterized him as a "great employee" with a "great work ethic."  Def. Ex. B.  We acknowledge, as the trial court did, J.B.'s eloquent statement about Betts's general performance (or lack thereof) as a father.  However, given Betts's nominal criminal history and his relatively consistent child-support payments over a long period, we are persuaded that any sentence in excess of the advisory would be inappropriate in this case.  On

remand, the trial court is instructed to revise Betts's sentence on Count I to the advisory term of three years, with one year to serve and two years (the first year and the third year) suspended to probation.

[10] As for Betts's argument that the trial court should have ordered him to serve the executed portion of his sentence in a way "that would permit him to serve the imposed sentence while still providing for his family," Appellant's Br. p. 28, that ball is in Betts's court. In sentencing Betts, the trial court made clear that it had no objection to modifying the sentence if Betts is accepted into an alternative-sentencing program (e.g., work release, home detention, community corrections) either in Kosciusko County or in Grant County, where Betts was living and working at the time of sentencing. Specifically, the court explained:

> Mr. Betts report one year from today's date for incarceration, which is December 7, Pearl Harbor Day, next year, report by 7:00 p.m. And I don't have a problem doing the alternative sentencing whether it's work release with our county, Grant County, . . . if it's home detention you can be home and work. [T]hose programs are expensive; at least the home detention can be kind of expensive. [I]f you want to modify the sentence, my sentence today is that you've got to report to the county jail, no objection to work release here, you would have to petition, be approved and modified to an out of county alternative sentencing program, whether it be work release out of the Grant County Jail, they would have to approve you and accept you before, I can't order you into their jail against their will and I think their community corrections is an application process.

* * * *

> I have no objection to work release or alternative sentencing whether it be Kosciusko or Grant County.

> \* \* \* \*

> Alright, you are to report on both counts then Pearl Harbor Day of 2018, December 7, by seven p.m. to the county jail, unless you have an order to modify before you report.

Tr. Vol. IV pp. 155-56, 160. We will not disturb this aspect of the trial court's sentencing decision.

[11] Affirmed in part and reversed and remanded in part.

Pyle, J., and Barnes, Sr. J., concur.